Case 4:21-cv-02511   Document 45   Filed on 03/19/24 in TXSD   Page 1 of 18

United States District Court
Southern District of Texas
**ENTERED**
March 19, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SHAYLA ANDERSON, *et al.*, § <br> Plaintiffs, § <br> § <br> VS. § <br> § <br> SUNRIDGE MANAGEMENT GROUP, § <br> INC., *et al.*, § <br> Defendants. § | CIVIL ACTION NO. 4:21-CV-02511 |

# MEMORANDUM OPINION AND ORDER

The defendants SunRidge Management Group ("SunRidge") and Grand Fountain Apts., LLC ("Grand Fountain") have moved for summary judgment on all claims alleged by the plaintiffs Shayla Anderson and Robert Edwards ("Anderson and Edwards"). Dkt. 35. On August 15, 2023, the Court granted the motion. Dkt. 40. Consistent with its prior ruling, the Court now enters this written opinion and order. Anderson and Edwards later moved for reconsideration of that ruling and then supplemented that reconsideration motion. Dkts. 41, 43. The Court denies the motion for reconsideration. *Id.* The Court also denies as moot the plaintiffs' counsel's motion to withdraw. Dkt. 42.

## I. Background

SunRidge is a property management company that provides services to Grand Fountain, an apartment complex located in the Cinco Ranch neighborhood of Richmond and managed by Rosie Cazares ("Cazares"). Dkts. 11 ¶ 15; 35 at 4. Anderson is African American and transgender. Dkt. 11 ¶ 13. Edwards is African American and of "varying sexual orientation." Dkt. 11 ¶ 13.

Anderson entered into a one-year apartment lease at Grand Fountain in November 2019. Dkt. 35 at 4. Edwards, Anderson's boyfriend, moved into the apartment with Anderson but was not named in the lease application or on the lease. Dkt. 35 at 4–5. While living at Grand Fountain, Edwards operated an automobile detail business in the apartment complex's parking lot. Dkt. 11 ¶ 19. Anderson and Edwards allege that Cazares repeatedly discriminated against them due to their race, sexual orientation, and gender preferences. Dkt. 11 ¶¶ 20a–k. The alleged discriminatory behaviors include ignoring noise complaints submitted by Anderson and Edwards, ignoring their maintenance requests, using racial slurs in reference to Edwards, calling the courtesy officer and police regarding Edwards' car detailing business, referring to Anderson as "sir" instead of "ma'am" or "Ms." despite knowing that Anderson identifies as a transgender woman, and using threatening and offensive body language towards Anderson and Edwards. Dkt. 11 ¶¶ 20a–k.

In August 2020, Anderson filed a complaint with the U.S. Department of Housing and Urban Development ("HUD") alleging discrimination on the basis of race and sex. Dkts. 11 ¶¶ 11,18; 35-7 at 127:14–128:7. In October 2020, Anderson filed a lawsuit in Justice of the Peace court in Fort Bend County against SunRidge and Grand Fountain seeking $20,000 based on the same allegations. Dkt. 35-6. The same month, Anderson emailed Cazares requesting to terminate Anderson's lease early. Dkt. 35-3 at 2. Cazares granted Anderson's request, but Anderson and Edwards continued to live in the apartment. Dkts. 35 at 5; 35-5 at 4. In November 2020, Anderson sent Grand Fountain a demand letter seeking $20,000 for alleged lease violations based on the same alleged discriminatory

behavior and retaliation. Dkt. 35-4. That same month, Anderson submitted a second HUD complaint. Dkt. 35-7 at 128:4–9.

In July 2021, Anderson voluntarily dismissed her lawsuit in Justice of the Peace court and subsequently filed this lawsuit one month later alleging violations of the Fair Housing Act ("FHA") under 42 U.S.C. § 3601 *et seq.*, Title VII of the Civil Right Act, and 28 U.S.C § 1983, as well as retaliation following her HUD complaints and lawsuit in Justice of the Peace court. Dkts. 11; 35 at 5; 35-7 at 124:15–25. In April 2022, HUD determined that "no reasonable cause exists to believe that a discriminatory housing practice has occurred." Dkt. 35-5 at 2, 10. Eventually, Grand Fountain initiated an eviction proceeding against Anderson for unpaid rent totaling $23,000, and Anderson and Edwards moved out of their Grand Fountain apartment in January 2023. Dkts. 35-1 ¶ 4; 35-7 at 175:23–177:25.

In June 2023, SunRidge and Grand Fountain moved for summary judgment on all claims. Dkt. 35. SunRidge and Grand Fountain argue that there is no evidence to support the allegations of racial or gender discrimination or of retaliation and that SunRidge and Grand Fountain had legitimate nondiscriminatory reasons for their actions. Dkt. 35 at 8–20. Anderson and Edwards did not file a response, and their attorney, Keith Nguyen ("Mr. Nguyen"), confirmed at docket call that they did not intend to file one. Dkt. 40. The Court then granted the motion for summary judgment on all claims based on the briefing, record, and applicable law and now issues this written opinion consistent with that ruling. Dkt. 40. Fifteen days later, Anderson and Edwards moved to reconsider the Court's decision on the

motion for summary judgment on the basis that Mr. Nguyen had told Anderson that he was working on a response to the motion for summary judgment but ultimately did not file one and stopped responding to all communications from her. Dkt. 41. Anderson then supplemented the motion for reconsideration based on additional arguments of attorney misconduct. Dkt. 43. In the interim, Mr. Nguyen moved to withdraw as counsel of record on behalf of Anderson and Edwards. Dkt. 42.

## II.  Standards of Review

### A.  Motion for Summary Judgment

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in the light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). For each cause of action moved on, the movant must set forth those elements for which it contends no genuine dispute of material fact exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to offer specific facts showing a genuine dispute for trial. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted).

The court "may not make credibility determinations or weigh the evidence" in ruling on a summary-judgment motion. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133,

150 (2000). But when the nonmoving party has failed "to address or respond to a fact raised by the moving party and supported by evidence," then the fact is undisputed. *Broad. Music, Inc. v. Bentley*, No. SA-16-CV-394-XR, 2017 WL 782932, at *2 (W.D. Tex. Feb. 28, 2017). "Such undisputed facts may form the basis for summary judgment." *Id.* The court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant. *United States v. Hous. Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

### B. Motion for Reconsideration

The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration. *Washington ex rel. J.W. v. Katy Indep. Sch. Dist.*, 403 F. Supp. 3d 610, 616 (S.D. Tex. 2019) (citing *St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997)). "A motion asking the court to reconsider a prior ruling is evaluated" as a motion to alter or amend a judgment under Rule 59 if it is filed within 28 days of the entry of judgment. *Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 182 n.2 (5th Cir. 2012). If the motion is filed after that time, it is analyzed as a motion for relief from a final judgment or order under Rule 60. *Id.* Anderson filed her motion within the 28-day window, so it is considered a Rule 59(e) motion. Dkt. 41.

"A Rule 59(e) motion calls into question the correctness of a judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004) (quotation marks omitted). A Rule 59(e) motion "'must clearly establish either a manifest error of law or fact or must present newly discovered evidence' and 'cannot be used to raise arguments which could, and should, have been made before the judgment issued.'" *Rosenzweig v. Azurix Corp.*, 332

F.3d 854, 863 (5th Cir. 2003) (quoting *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). "Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Templet*, 367 F.3d at 479 (citation omitted). "The Rule 59(e) standard favors the denial of motions to alter or amend a judgment." *Willbern v. Bayview Loan Servicing, LLC*, No. 20-cv-20129, 2021 WL 126419, at *3 (5th Cir. Jan. 13, 2021) (citing *S. Constructors Grp., Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993)). A party seeking reconsideration must satisfy "at least one of" the following criteria: "(1) the motion is necessary to correct a manifest error of fact or law; (2) the movant presents newly discovered or previously unavailable evidence; (3) the motion is necessary . . . to prevent manifest injustice; and (4) the motion is justified by an intervening change in the controlling law." *Wright's Well Control Servs., LLC v. Oceaneering Int'l, Inc.*, 305 F. Supp. 3d 711, 717–18 (E.D. La. 2018) (citations omitted).

### III. Applicable Law and Analysis

#### A. Motion for Summary Judgment

##### 1. Fair Housing Act, 42 U.S.C. § 3601 *et seq.*

Under the FHA, it is unlawful "[t]o refuse to sell or rent . . . or otherwise make unavailable or deny, a dwelling to any person" and "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities" on the basis of "race, color, religion, sex, familial status, or national origin." 42. U.S.C. §§ 3604(a)–(b).[1] To prove a discrimination claim under §§ 3604(a)–

---

[1] Anderson and Edwards do not specify the provision of the Fair Housing Act under which they bring their lawsuit against SunRidge and Grand Fountain. *See generally* Dkt. 11 (referring in

(b), a plaintiff must show that a defendant's "discrimination affected the availability of housing, not merely the habitability of housing." *Petty v. Portofino Council of Coowners, Inc.*, 702 F.Supp.2d 721, 728–29 (S.D. Tex. 2010) (citing *Cox v. City of Dallas,* 430 F.3d 734, 741–47 (5th Cir. 2005)).

To set forth a prima facie claim of disparate treatment under the FHA, Anderson and Edwards must show "(1) membership in [a] protected class, (2) that [they] applied and [were] qualified to rent or purchase housing[,] (3) that [they] [were] rejected, and (4) that the housing thereafter remained open to similarly situated applicants." *Mandawala v. Struga Mgmt.*, No. 21-50644, 2023 WL 2712500, at *4 (5th Cir. Mar. 30, 2023) (quoting *Crain v. City of Selma*, 952 F.3d 634, 640–41 (5th Cir. 2020)). "Once a plaintiff establishes a *prima facie* case of discrimination, courts employ the *McDonnell–Douglas* burden-shifting framework." *Id.* First, the defendant has the opportunity to demonstrate a "legitimate, non-discriminatory reason for the rejection." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 911 (5th Cir. 2019). "The burden then shifts back to the plaintiff to rebut the reason offered . . . by showing it is a pretext for discrimination." *Id.* "Under a disparate treatment theory, there can be no liability without a finding that the protected trait (*e.g.*, race) motivated the challenged action. The ultimate

---

their Amended Complaint only to "42. U.S.C. §§ 3601 et seq."). Consistent with the sections of the Fair Housing Act applicable to the allegations in this case and SunRidge and Grand Fountain's motion for summary judgment briefing, Dkt. 35, the Court analyzes the plaintiffs' FHA claims and the defendants' motion under 42 U.S.C. §§ 3604(a)–(b).

burden, however, remains with the plaintiff." *Mandawala*, 2023 WL 2712500, at *4 (internal quotation marks and citations omitted).

At the outset, Anderson and Edwards' claims under § 3604 fail because they relate to the habitability of their apartment rather than the availability of housing. *See Cox v. City of Dallas*, 430 F.3d 734, 741–47 (5th Cir. 2005) (finding that §§ 3604(a)–(b) require a showing that discrimination affected housing availability). Neither Anderson nor Edwards testified in their depositions that Grand Fountain denied them housing at any point when they lived at the complex. *See generally* Dkts. 35-7, 35-8. In fact, Grand Fountain permitted Anderson and Edwards to live in their apartment for years on a month-to-month lease without paying rent, even when their past-due rent totaled more than $20,000.00. Dkts. 35-1 at ¶ 4; 35-7 at 42:21–23.

Moreover, both Anderson and Edwards fail to establish a prima facie case of racial and sex-based discrimination. During her deposition, Anderson testified that she has no knowledge of any difference between Grand Fountain's response to her maintenance and noise complaints as compared to the complex's response to similar complaints of other tenants. Dkt. 35-7 at 77:15–24, 98:22–99:13. Anderson also acknowledged that the complex eventually addressed her maintenance requests, and the source of her noise complaints were an autistic child who the complex could not easily relocate. Dkt. 35-7 at 103:6–19, 105:4–13, 168:9–175:13. Similarly, Anderson proffers no support for her alleged instances of intentional misgendering or for her claim that the "weird body language and looks" by the complex's staff were motivated by racial or sex-based

discrimination. Dkt. 35-7 at 156:4–12, 167:23–168:7. For his part, Edwards has produced no evidence that Cazares singled out his business because of his race and could not identify any such evidence when asked to do so during his deposition. Dkt. 35-8 at 36:23–37:9, 61:6–63:2, 65:7–10. Edwards also fails to substantiate his allegation that Cazares used a racial slur in reference to him, including admitting that he did not actually hear Cazares use a racial slur. Dkt. 35-8 at 50:24–54:5.

As a result, Anderson and Edwards' assertions are "vague and conclusory allegations of disparate treatment" that are insufficient to establish a prima facie case for either racial or sex-based discrimination. *Inclusive Cmtys. Project*, 920 F.3d at 911. The briefing and record demonstrate no evidence that "a discriminatory reason motivated the defendants' [conduct] or that the defendants' explanation is unworthy of credence." *Mandawala*, 2023 WL 2712500, at *4. As a result, SunRidge and Grand Fountain are entitled to summary judgment on the plaintiffs' § 3604 claims.

### 2. Title VII of the Civil Rights Act of 1964

Title VII prohibits discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, . . . sex, and national origin." 42 U.S.C. § 2000e-2(a)(1). To prove a Title VII discrimination claim, plaintiffs must show that (1) they are a member of a protected class, (2) they were qualified for the position at issue, (3) they were the subject of an adverse employment action, and (4) they were treated less favorably because of their membership in that protected class than were other similarly situated employees or were replaced by a person who was not a member of their protected group. *See DeVries v. Harris*

*Cty.*, 643 F. Supp. 3d 696, 702 (S.D. Tex. 2022) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973)). If plaintiffs establish this prima facie case, "they establish a presumption of discrimination. The burden then shifts to the employer to provide a 'legitimate, nondiscriminatory reason' for its employment action. The plaintiff[s] must then respond with evidence showing the employer's proffered explanation as a mere pretext for discrimination." *Id.* (internal citations omitted). Notably, "[a] party must be an employer to be liable under Title VII." *Stewart v. BrownGreer PLC*, No. 14–1980, 2015 WL 6159127, at *2 (E.D. La. Oct. 20, 2015), *aff'd sub nom. Stewart v. BrownGreer, P.L.C.*, 655 F. App'x 1029 (5th Cir. 2016).

Plaintiffs "can avoid summary judgment if the evidence, taken as a whole: (1) creates a fact issue as to whether each of the employer's stated reasons was not what actually motivated the employer and (2) creates a reasonable inference that [a protected trait] was a determinative factor in the actions of which plaintiff complains." *DeVries*, 643 F.Supp.3d at 702 (citing *Grimes v. Texas Dep't of Mental Health & Mental Retardation*, 102 F.3d 137, 141 (5th Cir. 1996)).

Anderson and Edwards allege that SunRidge and Grand Fountain discriminated against them on the basis of race and sex in violation of Title VII. Dkt. 11 ¶¶ 8, 13–14. But Anderson and Edwards cannot establish a valid claim under Title VII because they have never been employed by SunRidge or Grand Fountain. *See DeVries*, 643 F.Supp.3d at 702; *Stewart*, 2015 WL 6159127, at *2; *see also* Dkt. 35 at 24. In their respective depositions, Anderson and Edwards each admitted that neither SunRidge nor Grand Fountain has ever

employed either one of them. Dkts. 35-7 at 27:23–28:3 (Anderson's admission); 35-8 at 26:9–14 (Edwards' admission). As a result, SunRidge and Grand Fountain are entitled to judgment as a matter of law on the Title VII claims.

### 3. 42 U.S.C. § 1983

Section 1983 provides a private right of action for the deprivation of rights, privileges, and immunities secured by the constitution or laws of the United States. 42 U.S.C. § 1983. A complaint under § 1983 must allege that the acts complained of occurred under color of state law and that the complaining parties were deprived of rights guaranteed by the constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986); *Piotrowski v. City of Houston*, 51 F.3d 512, 515 (5th Cir. 1995).

A complaint under § 1983 must also allege that the constitutional or statutory deprivation was intentional or due to deliberate indifference and not the result of mere negligence. *Farmer v. Brennan*, 511 U.S. 825, 826 (1994). A claim under § 1983 may be brought against government employees in their individual or official capacities or against a governmental entity. *Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009) (citing *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997)).

To establish a valid claim under § 1983, "a plaintiff must prove (1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting under color of state law." *Harris v. Wal-Mart Stores Texas, LLC*, No. 3:19-cv-00248, 2020 WL 4726757, at *12 (S.D. Tex. May 6, 2020) (citing *West v. Atkins*, 487 U.S. 42, 48, 108

S. Ct. 2250, 101 L.ed.2d 40 (1988)). Defendants acting under color of state law are "clothed with the authority of state law," *id.* at 49, 108 S.Ct. 2250 (citations omitted), and their "deprivation of a federal right [must] be fairly attributable to the State." *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982).

Anderson and Edwards fail to satisfy the second prong of this pleading requirement. As private entities, neither SunRidge nor Grand Fountain nor any of their employees is a state actor, and Anderson and Edwards have presented no evidence that SunRidge or Grand Fountain acted under the color of state law. *See* Dkts. 11; 35 at 25. As a result, SunRidge and Grand Fountain are entitled to judgment as a matter of law on the § 1983 claims. *See Beamon v. McCall-SB, Inc.*, 569 F.Supp.3d 587, 593 (S.D. Tex. 2019), *aff'd*, 797 F. App'x 168 (5th Cir. 2020) ("Section 1983's state action requirement, however, excludes from its reach wholly, private action no matter how discriminatory or wrongful."); *Harris*, 2020 WL 4726757, at *12 (dismissing with prejudice the plaintiff's § 1983 claim against Wal-Mart Stores Texas, LLC when the plaintiff alleged "no facts in support of any plausible theory that Wal-Mart acted under color of state law").

### 4. Retaliation under the Fair Housing Act and Title VII

The Fifth Circuit applies the same "burden-shifting framework" to analyze retaliation claims under § 3617 of the FHA and Title VII.[2] *Brown v. Harris Cty. Housing*

---

[2] In the Fifth Circuit, a plaintiff must allege an underlying violation of the Fair Housing Act to assert a retaliation claim under § 3617. *Hood v. Pope*, 627 F. App'x 295, 300 (5th Cir. 2015) ("Any subsequent harassment by any of the defendants did not violate § 3617, because as explained above, [Plaintiffs] have not stated a claim that they at any point exercised or enjoyed any right granted under § 3604."). A court may grant a motion to dismiss a claim for retaliation under § 3617 or a motion for summary judgment on the § 3617 claim if the plaintiff does not also

*Auth.*, No. H-15-2847, 2018 WL 3080880, at *11 (S.D. Tex. Jan. 11, 2018); *see Chavez v. Aber*, 122 F.Supp.3d 581, 599 (W.D. Tex. 2015) (citing *Texas v. Crest Asset Mgmt., Inc.*, 85 F.Supp.2d 722, 733 (S.D. Tex. 2000)); *Terry v. Inocencio*, No. No. 3:11–CV–0660–K–BK, 2014 WL 4686570, at *9 (N.D. Tex. Sep. 2, 2014).

To assert a prima facie case of retaliation, Anderson and Edwards must show that "(1) [they] engaged in a [protected activity]; (2) [they were] subject to an adverse [action by the defendants]; and (3) a causal connection exists between the protected activity and the adverse . . . action." *Brown*, 2018 WL 3080880, at *11; *see also LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 388 (5th Cir. 2007) (discussing requirements to assert a claim for retaliation under Title VII). "A causal connection can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." *Terry*, 2014 WL 4686570, at *9. "Subjective beliefs are insufficient to show an intentional discriminatory animus." *Scruggs v. Marshall Housing Auth.*, No. 00-40216, 2000 WL 1273473, at *2 (5th Cir. 2000); *see also Thornton v. Neiman Marcus*, 850 F. Supp. 538, 544 (N.D. Tex. 1994) (finding that evidence based on subjective beliefs is not competent summary judgment evidence in a Title VII retaliation case). If Anderson and Edwards establish a prima facie case for retaliation, the burden shifts to SunRidge and

---

assert an underlying FHA claim. *See McZeal v. Ocwen Fin. Corp.*, 252 F.3d 1355, 2001 WL 422375, at *12 (5th Cir. 2001) ("Because his § 3605 claim fails, McZeal's claim under § 3617 must also fail."); *Treece v. Perrier Condo. Owners Ass'n, Inc.*, 519 F.Supp.3d 342, 365 (E.D. La. 2021), *modified*, 569 F.Supp.3d 347 (E.D. La. 2021) ("Although some circuits have determined no underlying violation is necessary to assert a claim under § 3617, the Court is bound by the Fifth Circuit's precedent.").

Grand Fountain to demonstrate that they had a legitimate, non-discriminatory reason for their alleged discriminatory actions. *Texas v. Crest Asset Mgmt., Inc.*, 85 F.Supp.2d 722, 733 (S.D. Tex. 2000).

Anderson and Edwards allege that SunRidge and Grand Fountain retaliated against them for filing two HUD complaints and the lawsuit in Justice of the Peace court. Dkt. 11 ¶¶ 32–33. Specifically, Anderson and Edwards argue that Cazares "stalk[ed], threaten[ed] with eviction, threaten[ed] with write ups, and stopp[ed] [Edwards] from engaging in his business of automobile detailing all in front of other residents of the complex through threats, yelling and making a scene. The harassment, threatening and stalking caused [Edwards] to lose his customers and his business." Dkt. 11 ¶ 32. Anderson and Edwards also contend that since Anderson filed the lawsuit in Justice of the Peace court, Cazares "repeatedly and regularly approaches [Anderson and Edwards], threatening lease violations. The first incident was in October 2020 . . . and happens almost monthly." Dkt. 11 ¶ 21. These occurrences allegedly include sending the courtesy officer to their apartment to inform them that a "lease violation is being filed against them but without any foundation." Dkt. 11 ¶ 21. On another occasion in December 2021, Cazares allegedly told Edwards and one of the plaintiff's sons that they could not play on the inside basketball courts because they were not apartment residents. *Id.* Approximately 30 minutes after the complex's office had closed, Cazares "called the Fort Bend County Sheriff's Department to have them removed from the property," but the deputy did not take any action because they technically lived at the complex. *Id.*

SunRidge and Grand Fountain agree that Anderson's HUD complaints and her lawsuit in Justice of the Peace court constitute protected activities. *See Drake v. Nicholson*, 324 F. App'x 328, 331 (5th Cir. 2009) ("Filing an administrative complaint constitutes a protected activity."); Dkt. 35 at 22 (citing *Oxford House, Inc. v. City of Baton Rouge*, 932 F. Supp. 2d 683, 700 (M.D. La. 2013) (holding that filing a complaint with HUD or filing a lawsuit constitute a protected activity)).

However, the alleged conduct is not sufficiently adverse to constitute retaliation. *See Harmony Haus Westlake, LLC v. Parkstone Property Owners Ass'n, Inc.*, No. 1:20-CV-486-XR, 2021 WL 12134789, at *10–11 (W.D. Tex. Nov. 23, 2021) (finding that profanity "do[es] not rise to the level of material adversity required to independently establish a retaliation claim"); *but see Crest Asset Mgmt., Inc.*, 85 F.Supp.2d at 732–33 (finding the apartment complex cutting off electricity approximately 40 times, making death threats, threatening to bomb the plaintiff's apartment, and refusing to renew the plaintiff's lease after filing the lawsuit adverse under § 3617). Here, the complex's alleged delay for processing maintenance and noise requests and the notice of a lease violation for unpaid rent are consistent with standard apartment complex management procedures. Dkt. 35-7 at 118:3–121:9. This is especially the case since Anderson stopped paying rent under her lease *before* she received the first notice of lease violation, and she received that notice the same month that she filed her lawsuit in Justice of the Peace court. Dkt. 35-7 at 118:12–18, 123:7–124:11.

Moreover, Anderson has not met her burden to prove a causal connection between her protected activities and the alleged discriminatory conduct. Anderson filed her first HUD complaint related to this conduct in August 2020 and her second HUD complaint three months later in November 2020. Dkt. 35-7 at 128:18–129:23. In the interim, Anderson filed her lawsuit in Justice of the Peace court in October 2020. Dkt. 35-7 at 123:7–11. Anderson asserts that the retaliatory conduct started that same month and preceded her second HUD complaint. Dkt. 11 ¶ 21. Because the alleged conduct occurred both before and after Anderson filed her two HUD complaints and her lawsuit in Justice of the Peace Court, Anderson fails to establish a causal connection between the alleged retaliation and her protected activities. Dkt. 35-7 at 118:12–18, 123:7–124:11, 128:18–129:23; *see Crest Asset Mgmt., Inc.*, 85 F.Supp.2d at 733 (finding a causal connection when the alleged conduct "took place primarily after Defendants learned of [the plaintiff's] complaints").

For his part, Edwards fails to demonstrate that he participated in any protected activity. *See generally* Dkt. 35-8. As SunRidge and Grand Fountain argue, Edwards was not a party to either HUD complaint or to the case filed in Justice of the Peace court. Dkts. 35-6; 35-7 at 123:20–22; 35-8 at 13:24–14:2. Edwards also provides no arguments or evidence related to any other alleged protected activity. *See generally* Dkt. 35-8. As a result, Edwards' retaliation claims under the FHA and Title VII fail as a matter of law. *See Brown*, 2018 WL 3080880, at *11.

Because neither Anderson nor Edwards satisfied the elements of a prima facie case of retaliation, SunRidge and Grand Fountain are entitled to judgment on the retaliation claims under the FHA and Title VII.

### B. Motion for Reconsideration

Also before the Court is Anderson and Edwards' motion for reconsideration on the Court's ruling granting the defendants' motion for summary judgment on all claims. Dkts. 40, 41, 43. The Court denies the motion to reconsider. Dkts. 41, 43.

Anderson and Edwards' sole basis for their motion to reconsider—alleged attorney misconduct—does not satisfy any of the grounds on which a litigant may bring this type of motion. *See Epley v. Strong*, No. H-19-3036, 2023 WL 5733840, at *2 (S.D. Tex. Sep. 1, 2023) ("FRCP 59(e) may not be used to relitigate issues that were resolved to the movant's dissatisfaction. Rather, it serves to correct a manifest error of law or fact, to account for newly discovered evidence, or to accommodate an intervening change in controlling law.") (internal citations omitted). Moreover, the plaintiffs' attorney did not "abando[n] [the plaintiffs] prior to dismissal of the lawsuit" because he appeared at the pre-trial conference during which he had an opportunity to respond to the motion for summary judgment. Dkt. 40; *Epley*, 2023 WL 5733840 at *2. Anderson and Edwards' frustration that their attorney did not file a response to the motion with supporting evidence, even if accepted that he said he would, does not justify the Court's use of this "extraordinary remedy." *Templet v. HydroChem, Inc.*, 367 F.3d. 473, 479 (5th Cir. 2004).

## IV.     Conclusion

For the foregoing reasons and in support of its prior ruling, Dkt. 40, the Court grants the defendants' motion for summary judgment. It is hereby ordered that all claims made by the plaintiffs are dismissed. Final judgment will issue separately.

Accordingly, the Court denies the plaintiffs' motion for reconsideration. Dkts. 41, 43. The Court also denies as moot the plaintiffs' counsel's motion to withdraw. Dkt. 42.

SIGNED on March 19, 2024, in Houston, Texas.

*George C. Hanks, Jr.*
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE